# IN THE SUPREME COURT OF THE STATE OF NEVADA

KAREN CARTER,
Appellant,
vs.
THE STATE OF NEVADA, DIVISION
OF WELFARE AND SUPPORTIVE
SERVICES OF THE DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
AND STEVE H. FISHER, IN HIS
CAPACITY AS ADMINISTRATOR OF
THE NEVADA DIVISION OF
WELFARE AND SUPPORTIVE
SERVICES,
Respondents.

No. 70233

FILED

JUL 26 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a petition for judicial review in a public assistance matter. Eighth Judicial District Court, Clark County; Jennifer P. Togliatti, Judge.

In May 2011, appellant Karen Carter applied for public assistance provided by respondent the State of Nevada, Division of Welfare and Support Services (DWSS). In particular, appellant applied for the Supplemental Nutrition Assistance Program (SNAP) and Family Medical Coverage (FMC). When appellant applied, she and Derrick "Deon" Derrico had two children together and she was pregnant with twins. In appellant's application and subsequent recertification applications, she omitted Derrico from the household and indicated that she did not earn employment income.

Because appellant's initial application and subsequent recertification applications were approved, she received FMC benefits for

18-28854

May 2011 through August 2011, and she received SNAP benefits for June 2011 through August 2013.

In September 2013, appellant and Derrico gave birth to quintuplets, and a few days later DWSS initiated an investigation. The investigation revealed that appellant and Derrico owned and operated a daycare out of appellant's home. Moreover, DWSS's Child Care Subsidy Program paid the daycare $177,171.62 from 2011 to 2013.

DWSS subsequently requested that appellant provide actual income and expense information, but appellant did not comply with the request. DWSS then notified appellant that because she failed to report the earnings from a daycare allegedly owned and operated by her husband, she owed $13,000.00 in SNAP benefits and $1,826.55 in FMC benefits for overpayments she had received.

Appellant requested a hearing concerning the alleged overpayment in SNAP and FMC benefits. But before the rescheduled hearing, appellant produced documentation regarding the daycare's expenses. The next day, DWSS sent appellant a revised debt agreement, stating that she owned $11,029.00 in SNAP benefits due to her failure to report the correct household composition and self-employment earnings from the daycare. The $1,826.55 in FMC benefits she owed remained unchanged.

At the rescheduled hearing, Derrico testified that the daycare was his investment, as president, whereas appellant was only the treasurer of the daycare. He further stated that appellant was considered a non-salaried employee or unpaid intern, and that appellant's household bills, including groceries, came out of the daycare's income. Derrico did not contest the daycare's six-figure income from the time period in question; rather, he contested that the income never went to appellant specifically,

and thus, she was eligible for the benefits she received from DWSS. He explained that because the daycare was a corporation, not a sole proprietorship, DWSS could not seek repayment from appellant individually.

As to whether Derrico lived with appellant, Derrico testified that his sole primary residence had never been appellant's home, but he identified appellant's residence as "our home," which he solely owned, and "took care of every financial responsibility at that house." Derrico stated that he married appellant in May 2005 and he called appellant his wife on numerous occasions at the hearing, but he stated that they were separated, although not legally, from 2011 to 2013 and they lived in separate homes during this time. Derrico then replied in the affirmative when the hearing officer asked him if he ever stayed over once a month or went over periodically during that period. According to Derrico, documents, such as his tax records, reflected where he resided.

The hearing resulted in two decisions, one concerning appellant's SNAP overpayment and the other concerning appellant's FMC overpayment. Pursuant to the SNAP decision, the hearing officer found, in pertinent part, that Derrico resided at appellant's house at least one day per month. The hearing officer also concluded that (1) DWSS properly included Derrico in calculating appellant's SNAP benefits, (2) DWSS followed policy in calculating appellant's SNAP overpayment claim, and (3) appellant's arguments concerning in-kind income and the corporate status of the daycare were irrelevant because Derrico should have been included in the assistance unit. Pursuant to the FMC decision, the hearing officer concluded that (1) DWSS properly included Derrico in calculating appellant's FMC benefits, and (2) DWSS followed policy in calculating appellant's FMC overpayment claim. Pursuant to both decisions, the

(O) 1947A

hearing officer concluded that DWSS properly established an overpayment claim.

Appellant petitioned the district court for judicial review of the final agency decision. Ultimately, the district court denied appellant's petition after concluding that there was substantial evidence to support the hearing officer's decisions.

On appeal, appellant contends that (1) the hearing officer's decisions concerning the overpayment of SNAP and FMC benefits were arbitrary, capricious, and erroneous, and thus, warrant reversal; and (2) DWSS was not authorized to determine overpayment of benefits after appellant stopped receiving benefits. In particular, appellant contends that the hearing officer erred in finding that appellant was ineligible for SNAP and FMC benefits due to the daycare's income because this income was corporate assets, not personal income.[1] Appellant further argues that DWSS may only reduce, suspend, or terminate *ongoing* benefits under NRS Chapter 422A, specifically NRS 422A.275(1) and 422A.700(1), and thus, DWSS was not authorized to determine whether appellant was liable for

---

[1]Appellant further contends that the hearing officer found that Derrico's testimony regarding residency was equivocal, and thus, she alleges that there was no substantial evidence to find that Derrico was a member of appellant's household. However, the hearing officer never made such a finding. Appellant additionally contends that the hearing officer erroneously relied on common law marriage principles to calculate Derrico's income as part of appellant's household for determining SNAP benefits. However, the hearing officer never mentioned common law marriage, let alone relied on the principle in reaching his determination.

the overpayment of benefits *after* she stopped receiving benefits.[2] We disagree with all of appellant's contentions.

*Standard of review*

We review a petition for judicial review of an administrative decision under the same standard as the district court, without any deference to the district court's decision. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). Accordingly, this court reviews "an administrative agency's factual findings for clear error or an arbitrary abuse of discretion and will only overturn those findings if they are not supported by substantial evidence." *Id.* (internal quotation marks omitted). "Substantial evidence exists if a reasonable person could find the evidence adequate to support the agency's conclusion," and "[t]his court will not reweigh the evidence or revisit an appeals officer's credibility determination." *Id.* (internal quotation marks omitted). On the other hand, "[a] de novo standard of review is applied when this court addresses a question of law, including the administrative construction of statutes." *Id.* (internal quotation marks omitted).

*The hearing officer's decisions regarding SNAP benefits do not warrant reversal*

DWSS is responsible for administering all public welfare programs in Nevada, including SNAP. NRS 422A.338(1)(a)(4). Accordingly, this court is directed to the relevant sections of DWSS's manual.

---

[2]Appellant makes several arguments regarding the constitutionality of various sections of NRS Chapter 422. These include allegations that the statutes violate the separation of powers, right to a jury trial, due process, and equal protection. After considering each of appellant's constitutional contentions, we conclude that they lack merit.

*The hearing officer did not err in concluding that DWSS properly included Derrico in calculating appellant's SNAP benefits*

"A SNAP household is composed of . . . [a] group of people who live, purchase food, and prepare meals together." Nev. Dep't of Health & Human Servs., Div. of Welfare & Supportive Servs., Eligibility & Payments Manual (E&P Manual), Part A § 330 (Sep. 1, 2009). "The limitations contained within [the definition of a SNAP household] were designed to further limit the number of instances in which household members may manipulate current rules and gain status as separate food stamp households (and receive, thereby, larger benefits), although they live together and depend on one another for support." *Hudson v. Bowling*, 752 S.E.2d 313, 324 n.19 (W. Va. 2013) (internal quotation marks omitted) (discussing the similar definition of "household" used for federal SNAP benefits).

In determining the composition of a SNAP household, certain people who live together are considered to purchase and prepare meals together, even if they actually do not. E&P Manual, Part A § 330. These people include:

> Spouses – *Spouses are people* who are married to each other or *who live together and represent themselves to the Division or the community as husband and wife* (such as listing spouse as their relationship on the application or a lease agreement). This definition may differ from state law governing common-law marriage. (Nevada does not recognize common-law marriages.) *Consider spouses living together even when one spouse is*:
>
> – away from home for employment purposes; and
>
> – *away but returns at least one day a month.*

*Id.* (emphases added).[3]

Here, substantial evidence supports the hearing officer's determination that appellant and Derrico represented themselves as husband and wife, and that they lived together at least one day a month. During the hearing, Derrico testified that they were married and he referred to appellant as his wife on numerous occasions. Appellant also referred to Derrico as her husband when she renewed the daycare's license. In addition, based on the evidence presented below, there were numerous factors indicating that they lived together, such as the fact that the two had four children together and conceived quintuplets before the cessation of benefits, and Derrico was involved in his children's and appellant's lives and provided them support. Finally, Derrico's testimony at the hearing revealed that he returned to the home at least one day a month. Because substantial evidence supported the finding that Derrico was part of the SNAP household, the hearing officer's conclusion that DWSS properly included Derrico in calculating appellant's SNAP benefits was appropriate. An opposite conclusion would defeat the purpose of limiting the number of instances in which a household may manipulate the rules in order to gain SNAP benefits.

*The hearing officer did not err in concluding that DWSS properly calculated appellant's SNAP overpayment claim*

---

[3]Part A, Section 330 of the E&P Manual was updated in September 2015. Letter from Steve H. Fisher to Custodians of Eligibility and Payments Manual (Sep. 15, 2015) (available at https://dwss.nv.gov/uploadedFiles/dwssnvgov/content/Home/Features/EP%2002-15%20Sept%202015%20Release.pdf). However, because appellant received the benefits at issue prior to the 2015 update, the 2009 version, cited here, applies. Nevertheless, we note that the 2015 updates would not change our analysis.

After the composition of the SNAP household is determined, the household's gross income is determined next. A SNAP household must have a gross income equal to or below 200% of the federal poverty level. E&P Manual, Part A § 650.1. Because Derrico should have been included in the SNAP household, the monthly limit for eligibility should have been based on a household of four and, after the twins were born, a household of six. In 2011, this monthly limit was $3,725 for a household of four and $4,998 for a household of six. *See* Annual Update of the HHS Poverty Guidelines, 76 Fed. Reg. 13, 3638 (Jan. 20, 2011). In 2012, the monthly limit was $5,162 for a household of six. *See* Annual Update of the HHS Poverty Guidelines, 77 Fed. Reg. 17, 4035 (Jan. 26, 2012). In 2013, the monthly limit was $5,265 for a household of six. *See* Annual Update of the HHS Poverty Guidelines, 78 Fed. Reg. 16, 5183 (Jan. 24, 2013).

Here, appellant's SNAP household income exceeded the monthly limit for all but six out of the twenty-seven months she received benefits. Accordingly, respondents submitted evidence of the under/overissuance for each month, which totaled an overissuance of $11,029.[4] Therefore, the hearing officer did not err in concluding that DWSS followed policy in calculating the SNAP overpayment claim.

Additionally, although appellant contended that she only received in-kind income from the daycare, which is exempt from SNAP

---

[4]Based on this evidence, appellant's contention that there was no evidence of any maximum income allowable for SNAP or FMC benefits lacks merit. Moreover, appellant's additional contention that there was no evidence of Derrico's actual income to show that appellant was ineligible for benefits also lacks merit because DWSS requested proof of actual income from appellant, but appellant did not comply with the request, and thus, respondents properly relied on the evidence of income generated by the daycare.

household income, differentiating in-kind income from income that is counted is unnecessary because Derrico was part of the household; thus, his self-employment income from the daycare counted as earned income that was nonexempt. *See* E&P Manual, Part A § 711 (stating that earned income is cash or in-kind income that the household receives for performing work); E&P Manual, Part A § 720.1 (stating that in-kind income is considered earned income that is exempt in determining SNAP benefits, and self-employment income is considered earned income that is counted and nonexempt in determining SNAP benefits). Moreover, attributing the daycare's income as appellant's household income was appropriate, despite appellant's contention that the daycare's income was solely separate corporate assets, because evidence revealed that appellant was the owner and operator of the daycare. Finally, characterizing the daycare's income as corporate assets to shield DWSS from using the income in its calculations would be a manipulation of the rules in order to gain SNAP benefits. Therefore, the hearing officer did not err in concluding that appellant's arguments concerning in-kind income and the corporate status of the daycare were irrelevant.

*The hearing officer's decisions regarding FMC benefits do not warrant reversal*

Because DWSS also administers FMC benefits, also known as Medicaid, this court is again directed to the relevant sections of DWSS's manual. *See* NRS 422A.338(1)(a)(3).

> *The hearing officer did not err in concluding that DWSS properly included Derrico in calculating appellant's FMC benefits*

In calculating FMC benefits, "[t]he household may not exclude a required member from the assistance unit." E&P Manual, Part A § 330. In addition to eligible children, "the needs of natural/adoptive parents (regardless of marital status)" are also included. *Id.* Based on the foregoing,

we conclude that the hearing officer did not err in concluding that DWSS properly included Derrico in appellant's FMC assistance unit.[5]

*The hearing officer did not err in concluding that DWSS properly calculated appellant's FMC overpayment claim*

Modified adjusted gross income is used in determining eligibility for FMC. Nev. Dep't of Health & Human Servs., Div. of Welfare & Supportive Servs., Medical Assistance Manual (MA Manual), Part A § 105 (Jul. 1, 2015). With regard to the types of income that should be identified as excluded or counted, "in-kind wages" are considered earned and counted in financial and patient liability. MA Manual, Part E § 300 (Mar. 1, 2014).[6] Moreover, FMC is available for a household with an income equal to or below 138% of the federal poverty level. MA Manual, Part A § 105. In 2011, the monthly maximum income for a family of four to receive FMC benefits was $2,570.25. *See* Annual Update of the HHS Poverty Guidelines, 76 Fed. Reg. 13, 3638 (Jan. 20, 2011).

Here, for the respective months appellant received FMC benefits in 2011, the daycare earned $6,203.32 in May, $11,311.93 in June, $9,097.70 in July, and $8,700.65 in August. This well exceeds the federal poverty level. Although the hearing officer erroneously applied 130% of the poverty level for a family of five, appellant's household income exceeded a minimum of 300% of the federal poverty level in any applicable month that

---

[5]Even if the E&P Manual does not apply to FMC benefits, the Medical Assistance Manual supports the hearing officer's ultimate decision concerning FMC benefits. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

[6]It appears that different sections of the MA Manual were updated on different dates; hence, this order cites to the applicable versions.

SUPREME COURT
OF
NEVADA

(O) 1947A

she received FMC benefits. Thus, regardless of what percentage is applied or whether the household consisted of four or five, appellant received a total of $1,826.55 in FMC benefits to which she was not entitled, and the hearing officer did not err in concluding that DWSS followed policy in calculating appellant's FMC overpayment claim. *See* Nev. Dep't of Health & Human Servs., Div. of Welfare & Supportive Servs., Investigations & Recovery Policy Manual (I&R Manual), § 305.1.1 (Jan. 1, 2011) (stating that the total Medicaid claim amount is determined by "separately reviewing the month(s) each assistance unit member was totally ineligible . . . for any program benefits, and adding together all Medicaid benefits paid the corresponding periods").

*DWSS was authorized to determine overpayment of benefits after appellant stopped receiving benefits*

Regarding SNAP benefits, NRS 422A.3352(1)(d) requires that DWSS "recover from a recipient of public assistance . . . the amount of public assistance incorrectly paid to the recipient, if the person who signed the application . . . [m]ade any false representation regarding the recipient's income and assets . . . ." In addition, "a recipient of incorrectly paid public assistance . . . shall reimburse [DWSS] or appropriate state agency for the value of the incorrectly paid public assistance," and "[t]he Director [of DWSS] or a person designated by the Director may . . . determine the amount of, and settle, adjust, compromise or deny a claim against a recipient of public assistance . . . ." NRS 422A.3352(2)-(3).

With regard to FMC benefits, the NRS similarly requires DWSS to recover the amount incorrectly paid in benefits from the recipient. *See* NRS 422.29304. Additionally, NRS 422A.3351(2)(a) provides that "[a]ny person who signs an application for Medicaid and fails to report to [DWSS] [a]ny required information which the recipient knew at the time the

(O) 1947A

recipient signed the application . . . may be personally liable for any money incorrectly paid to the recipient."

DWSS's manual concerning the determination of SNAP and FMC overpayment aligns with the NRS Chapter 422A provisions. "SNAP . . . [and] Medicaid . . . claims are referred to . . . [DWSS], Investigations and Recovery (I&R) Unit for establishment and/or recovery of the claim . . . ." I&R Manual § 401. With regard to SNAP, "[a]ll adult members of the assistance unit are jointly and separately liable for the value of any over issuance of benefits received by the unit. Each adult member of the overpaid household will be pursued for repayment of the DWSS claim." I&R Manual § 402.2. With regard to FMC, "[c]laims are recovered from any adult member of the overpaid assistance unit regardless of their current eligibility status." I&R Manual § 402.3. Furthermore, the I&R Unit calculates all claims for closed Medicaid and SNAP cases. I&R Manual § 305.1. We therefore conclude that DWSS was authorized to determine appellant's liability for overpayment of SNAP and FMC benefits under NRS Chapter 422A and the I&R Manual, despite appellant's prior cessation of public assistance. Based on the foregoing, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

 

cc: Hon. Jennifer P. Togliatti, District Judge
Koeller Nebeker Carlson & Haluck, LLP/Las Vegas
Attorney General/Carson City
Attorney General/Las Vegas
Legal Aid Center of Southern Nevada, Barbara E. Buckley, Executive Director
Anne R. Traum, Coordinator, Appellate Litigation Section, Pro Bono Committee, State Bar of Nevada
Kelly H. Dove
Eighth District Court Clerk